[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a motion to dissolve a pre-judgment attachment. The action was initially commenced by an application for a pre-judgment remedy which was ordered in the amount of $161,000.00. The defendant did not appear at the hearing.
The suit is based on a claim for the unpaid principal of a promissory note in the amount of $100,000.00 signed by the defendant, as well as interest calculated at 12% from March of 1995, the due date of the promissory note.
It is important to identify the relationship of the parties and the witness to this financial transaction. The defendant was married to the daughter of Ann Mundinger and at the time Ms. Mundinger had been married to the plaintiff since 1982. Ms. Mundinger was a C.P.A. and she testified CT Page 411 that she was the agent to administer everything to do with most of her husband's business transactions and he would rely on her to perform any legal transactions that were serious.
In 1993 the defendant was beginning a construction company and, through Ms. Mundinger, financing was obtained from the plaintiff through the execution of a promissory note. It should be noted that the note was prepared by Ms. Mundinger and to protect the interest of her husband, she had post dated the checks for the monthly interest payments of 12% upon execution of the note. Throughout this entire process, the checks were prepared by Ms. Mundinger, signed by the defendant, given to her and she delivered them to her husband. The plaintiff was comfortable with that arrangement. In 1994, when the initial promissory note was due, it was renegotiated, again through Ms. Mundinger, and post dated checks were prepared and delivered to the plaintiff. At one point, the checks were reissued for the convenience of the plaintiff, as he has changed banks.
In 1995, the plaintiff maintained his residence in Florida. However, Ms. Mundinger had been living in Connecticut with her daughter for an extended period of time, as she was suffering from an ultimately fatal medical condition. In March of 1995, the defendant executed the final payment of $100,000.00 with a check payable to the plaintiff, Mr. Rosenswaike. As had been the custom, Ann Mundinger wrote the check, had it signed and took possession to apparently deliver to her husband. However, rather than deliver it, she made a phone call to the plaintiff and advised him that she was going to endorse the check and deposit it in her account because she did not intend to return to Florida as she had been upset that she had no contact from him since the death of her daughter. The plaintiff apparently was upset that Ms. Mundinger was going to deposit and keep the proceeds of the check, but more upset that she was not going to return to Florida. Ms. Mundinger deposited the funds and used it for her own personal use. A letter was admitted which had been signed and sworn to by the plaintiff and had been sent to Ms. Mundinger in August of 1995, which indicated and in part "this note has been paid in full" and went on to say "prior to this agreement, the parties have received various sums and payments of this promissary note which they have individually retained." The letter had been prepared by the attorney for Mr. Rosenswaike. Ms. Mundinger was unrepresented at the time. Mr. Rosenswaike indicated that this was a letter advising Ms. Mundinger that if she would agree to a divorce, she could keep the possessions that she had taken and that they would not hold her accountable for the $100,000.00, or press criminal charges. The plaintiff testified to this intention on two occasions.
Although neither the plaintiff or the defendant could produce the final Florida divorce decree, both parties testified that the $100,000 proceeds CT Page 412 of the check. retained by Ms. Mundinger was part of the settlement of the divorce.
It is significant to the court that there was no evidence that upon receipt of the phone call from Ms. Mundinger that the plaintiff ever contacted the defendant to demand payment of the $100,000.00, or advise him of his wife's intentions. There was no evidence that the plaintiff ever contacted the bank with respect to the fact his wife was intending to deposit the $100,000.00 into her account after endorsing his name nor any evidence of any action initiated by the plaintiff until after he had procured a divorce settlement from his wife in 1999 based on receiving credit for the $100,000.00.
The plaintiff has argued that the reference to the initial letter signed and notarized by the plaintiff to Ms. Mundinger was, in effect, an offer to compromise. This court disagrees. The statement that the loan had been paid in full and that the parties had received the proceeds of the check was not an admission of liability, but a statement of an affirmative fact alleged by the plaintiff to claim his wife had appropriated the proceeds of the note to ultimately extract the equivalent amount of $100,000.00 from her though the divorce proceedings. It should be further noted that the defendant was obviously not a participant in the divorce proceedings nor a participant in the correspondence which the plaintiffs now claim were negotiations. Regardless of the admission by the plaintiff in his letter of August 19, 1995, the testimony of both parties at the time of the hearing was that the plaintiff was aware that Ms. Mundinger had received the check from her son-in-law, as had been the accepted procedure throughout the course of these transactions; that he was aware that she had the check in her possession and intended to endorse his name and deposit the funds; that he utilized the impropriety of her endorsing his name, as well as collecting the $100,000.00 to incorporates that into the final terms and conditions of their divorce decree and that he took no action against the defendant until after the divorce, leaving this court to assume that it is not likely the plaintiff will be allowed to recover a second $100,000.00 from the defendant.
Therefore, the pre-judgment remedy initially awarded in July 19, 1999 is vacated and denied.
Gilardi, Judge.